# EXHIBIT A

## SETTLEMENT AGREEMENT

This Settlement Agreement (Agreement) is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the Small Business Administration (collectively the "United States"), Lafayette RE Management LLC ("Lafayette"), Thibault Adrien ("Adrien"), and Jesus Nunez-Unda (the "Relator") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. Lafayette is a private asset management company based in New York, New York that invests in residential real estate through several funds and other investment vehicles. Lafayette's portfolio includes single-family residential homes located in San Antonio, Texas.

B. Adrien is Lafayette's founder and majority owner.

C. On June 22, 2022, Relator filed a qui tam action in the United States District Court for the Western District of Texas captioned *United States ex rel. Nunez-Unda v. Lafayette RE Management LLC, Brandywine Homes USA LLC, and Thibault Adrien*, No. 5:22-cv-00659-FB, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the "Civil Action"). Relator alleges *inter alia* that Lafayette received a $335,000 Paycheck Protection Program ("PPP") loan, and received forgiveness for the entire amount of the loan, by making false certifications in its PPP loan application and application for loan forgiveness. Relator further alleges Adrien was the signatory for Lafayette in its execution of both the PPP loan application and application for loan forgiveness. Relator also alleges that Brandywine Homes USA LLC received a $340,882

1

PPP loan, and received forgiveness for the entire amount of the loan, by making false certifications in its PPP loan application and application for loan forgiveness.

D. Congress established the PPP in March 2020 as part of the Coronavirus Aid, Relief, and Economic Security Act, P.L. 116-136 (the "CARES Act"), to provide emergency financial assistance to millions of Americans suffering economic effects caused by the COVID-19 pandemic. Under the program, eligible businesses could receive short-term, low-interest, forgivable loans by certifying on their loan applications, in pertinent part, (1) "[c]urrent economic uncertainty makes this loan request necessary to support the ongoing operations of the applicant," and (2) "[t]he funds will be used to retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments . . . ." 85 Fed. Reg. 20811-01. Applicants submitted PPP loan applications to a participating third-party lender, which received from SBA a fee for processing the loan. If the loan was approved, the participating lender funded the loan, which was guaranteed by the SBA up to the full amount of the loan.

E. The United States contends that it has certain civil claims against Adrien and Lafayette arising from Lafayette's PPP loan application and request for loan forgiveness, each of which was signed by Adrien. Specifically, the United States contends Adrien and Lafayette applied for and received a $335,000 PPP loan by falsely certifying in the loan application that the requested loan was necessary because of the economic uncertainty Lafayette faced due to the COVID-19 pandemic. The United States further contends Adrien and Lafayette applied for and received forgiveness of the entire loan amount by submitting a forgiveness application containing false statements. This occurred

during the period from March 1, 2020, through May 31, 2021. The conduct set forth in this paragraph is referred to below as the Covered Conduct.

F. This Settlement Agreement is neither an admission of liability by Adrien or Lafayette nor a concession by the United States that its claims are not well founded.

G. Adrien and Lafayette deny the United States' allegations in Paragraph E and the Relator's allegations in the Civil Action.

H. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees, and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. Adrien and Lafayette shall pay to the United States six hundred eighty thousand dollars ($680,000.00) ("Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Western District of Texas no later than 45 days after the Effective Date of this Agreement.

2. Conditioned upon the United States receiving the Settlement Amount and as soon as feasible after receipt, the United States shall pay $129,200 to Relator by electronic funds transfer ("Relator's Share").

3. Subject to the exceptions in Paragraph 5 (concerning reserved claims) below, and upon the United States' receipt of the Settlement Amount, the United States

3

releases Adrien and Lafayette, together with Lafayette's current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; current or former corporate owners; and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4.     Subject to the exceptions in Paragraphs 5, 7, and 14 below, and upon the United States' receipt of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys, agents, and assigns, releases Adrien and Lafayette, together with Lafayette's current and former parent corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; members; current or former corporate owners; and the corporate successors and assigns of any of them, from any and all claims or causes of action of any kind, known or unknown, or any liability, under common law, contract, tort, breach of fiduciary duty, unjust enrichment, and/or any statutory claims the Relator has on behalf of the United States arising from or related to the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5.     Notwithstanding the releases given in Paragraph 3 of this Agreement, or any other term of this Agreement, the following claims and rights of the United States are specifically reserved and are not released:

    a.   Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b.   Any criminal liability;

4

    c. Except as explicitly stated in the Agreement, any administrative liability or enforcement right, or any administrative remedy, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement;

    f. Any liability of individuals other than Adrien;

    g. Any liability for express or implied warranty claims or other claims for defective or deficient products or services, including quality of goods and services;

    h. Any liability for failure to deliver goods or services due; and

    i. Any liability for personal injury or property damage or for other consequential damages arising from the Covered Conduct.

6. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). Conditioned upon Relator's receipt of the Relator's Share, Relator and his heirs, successors, attorneys, agents, and assigns fully and finally release, waive, and forever discharge the United States, its agencies, officers, agents, employees, and servants, from any claims arising from the filing of the Civil Action or under 31 U.S.C. § 3730, and from any claims to a share of the proceeds of this Agreement and/or the Civil Action.

7. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases Adrien and Lafayette, together with Lafayette's current and former parent

corporations; direct and indirect subsidiaries; brother or sister corporations; divisions; members; current or former corporate owners; and the corporate successors and assigns of any of them, from any and all claims, causes of action of any kind, known or unknown, under common law, contract, tort, breach of fiduciary duty, unjust enrichment, and/or statutory civil monetary claims and any liability to Relator arising from the Civil Action, the Covered Conduct, any claims under the False Claims Act, 31 U.S.C. §§ 3729-3733, with the exception that Relator is not releasing any claims, causes of action, defenses, or pleas for relief Relator has asserted against Adrien or Lafayette in the action entitled *Jesus Nunez-Unda v. Thibault Louis Philippe Adrien, Lafayette Re Management, LLC, and POL Operator, LLC* (Index No. 650971/2022) (the "NY Supreme Action"). For avoidance of doubt, this exception includes, without limitation, claims, causes of action, defenses, arguments, or pleas for relief for common law, contract, tort, breach of fiduciary duty, unjust enrichment, and/or statutory civil monetary liability in the NY Supreme Action arising from the Covered Conduct, whether pursued in the NY Supreme Action as currently pleaded, by amended pleading, or by pleading conformed to the evidence, provided such claims, causes of action, defenses, arguments, or pleas for relief do not include those claims released in Paragraph 4 of this Agreement and/or dismissed pursuant to Paragraph 13 of this Agreement.

8. Adrien and Lafayette waive and shall not assert any defenses Adrien or Lafayette may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the

Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. Adrien and Lafayette fully and finally release the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Adrien or Lafayette have asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct or the United States' investigation or prosecution thereof.

10. Adrien and Lafayette fully and finally release the Relator from any claims (including attorneys' fees, costs, and expenses of every kind and however denominated) that Adrien and Lafayette have asserted, could have asserted, or may assert in the future against the Relator arising from the Civil Action, the Covered Conduct, or the Relator's investigation and prosecution thereof with the exception that Adrien and Lafayette are not releasing any claims, causes of action, counterclaims, defenses, or pleas for relief Adrien or Lafayette has asserted against Relator in the action entitled *Jesus Nunez-Unda v. Thibault Louis Philippe Adrien, Lafayette Re Management, LLC, and POL Operator, LLC* (Index No. 650971/2022) (the "NY Supreme Action"). For avoidance of doubt, the exception above includes, without limitation, claims, causes of action, counterclaims, defenses, arguments, or pleas for relief for common law, contract, tort, breach of fiduciary duty, unjust enrichment, and/or statutory civil monetary liability in the NY Supreme Action arising from the Covered Conduct, whether pursued in the NY Supreme Action as currently pleaded, by amended pleading, or by pleading conformed to the evidence.

11.

7

      a.    Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Adrien and Lafayette, and Lafayette's present or former officers, directors, employees, shareholders, and agents in connection with the following subparagraphs (1) through (5), are unallowable costs for government contracting purposes (hereinafter referred to as "Unallowable Costs").

(1)    the matters covered by this Agreement;

(2)    the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

(3)    Adrien's and Lafayette's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in connection with the matters covered by this Agreement (including attorneys' fees);

(4)    the negotiation and performance of this Agreement;

(5)    the payment Adrien and Lafayette make to the United States pursuant to this Agreement and any payments that Adrien and Lafayette may make to Relator, including costs and attorneys fees.

      b.    Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by Adrien and Lafayette, and Adrien and Lafayette shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

   c. Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Agreement, Adrien and Lafayette shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by Adrien or Lafayette or any of Lafayette's subsidiaries or affiliates from the United States. Adrien and Lafayette agree that the United States, at a minimum, shall be entitled to recoup from Adrien and Lafayette any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Adrien's and/or Lafayette's books and records and to disagree with any calculations submitted by Adrien and/or Lafayette or any of Lafayette's subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Adrien and/or Lafayette, or the effect of any such Unallowable Costs on the amount of such payments.

  12. This Agreement is intended to be for the benefit of the Parties only.

  13. Upon receipt of the payment described in Paragraph 1, above, the United States and the Relator shall promptly sign and file in the Civil Action a Joint Stipulation of Dismissal of the Civil Action pursuant to Rule 41(a)(1), with prejudice as to Relator, and with prejudice to the United States only as to the Covered Conduct.

  14. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, with the exception that, no later than 45 days after the Effective Date of this Agreement, Adrien and Lafayette shall pay to Relator's counsel the amount agreed to between Adrien, Lafayette,

9

and Relator reflected in correspondence between Counsel dated October 23, 2024, in satisfaction of any claims Relator may have for attorney's fees and costs under 31 U.S.C. § 3730(d).

15. Each Party and signatory to this Agreement represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion.

16. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the Western District of Texas. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

18. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

19. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

20. This Agreement is binding on Adrien's and Lafyette's successors, transferees, heirs, and assigns.

21. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

22. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

10

23. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures, including PDFs of signatures, or verifiable time-stamped electronic signatures, shall constitute acceptable, binding signatures for purposes of this Agreement.

## THE UNITED STATES OF AMERICA

DATED: _____   BY: _____
SAMUEL SHAPIRO (Digitally signed by SAMUEL SHAPIRO, Date: 2024.11.25 13:06:50 -06'00')
SAMUEL M. SHAPIRO
Assistant United States Attorney
Western District of Texas

## ADRIEN AND LAFAYETTE - DEFENDANTS

DATED: 11/22/2024   BY: _____
(DocuSigned by: Andy Peluso, F56927FB37084FA...)
LAFAYETTE RE MANAGEMENT LLC

DATED: 11/22/2024   BY: _____
(DocuSigned by: Thibault Adrien, C5A5FB8B2C9B469...)
THIBAULT ADRIEN

DATED: 11/22/2024   BY: _____
(Signed by: John Delionado, D03ABCEBEFA94CA...)
JOHN J. DELIONADO
Counsel for Adrien and Lafayette

## JESUS NUNEZ-UNDA - RELATOR

DATED: 22/11/24   BY: _____
Jesus Nuñez-Unda (Nov 22, 2024 14:43 EST)
JESUS NUNEZ-UNDA

DATED: 11/22/2024   BY: _____
Max Rodriguez
MAX RODRIGUEZ
Counsel for Relator

12